UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CHAUNCY MONTREAL WILLIAMS

VERSUS

COMMISSIONER SOCIAL SECURITY

CIVIL ACTION NO.

18-1064-SDD-EWD

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 2, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CHAUNCY MONTREAL WILLIAMS

VERSUS

COMMISSIONER SOCIAL SECURITY

CIVIL ACTION NO.

18-1064-SDD-EWD

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Chauncy Montreal Williams ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for supplemental security income ("SSI").[1] Plaintiff has filed memorandum in support of his appeal,[2] and the Commissioner has filed an opposition memorandum.[3]

Based on the applicable standard of review under § 405(g) and the analysis which follows, it is recommended that the Commissioner's decision be affirmed.

### I.    Procedural History

Plaintiff filed an application for SSI[4] alleging disability beginning April 9, 2013[5] due to Mild Mental Retardation ("MMR") and learning disability.[6] Plaintiff's claim was initially denied[7] and Plaintiff requested a hearing before an administrative law judge ("ALJ").[8] A hearing was held

---

[1] *See*, AR pp. 116-126 (application for SSI); AR pp. 1-4 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc. 7.

[3] R. Doc. 9.

[4] AR pp. 116-126.

[5] AR p. 121.

[6] AR p. 209.

[7] AR pp. 80-83.

[8] AR p. 114.

on August 25, 2017. Plaintiff, represented by counsel, testified at the hearing.[9]

On January 28, 2018, the ALJ issued a notice of unfavorable decision.[10] On October 10, 2018, the Appeals Council denied Plaintiff's request for review.[11] On December 5, 2018, Plaintiff filed this appeal.[12] Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[13]

## II. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[14] If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[15]

## III. The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that

---

[9] AR pp. 28-66.

[10] AR pp. 8-23.

[11] AR pp. 1-4.

[12] R. Doc. 1.

[13] *See*, 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

[14] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[15] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

prevents the claimant from engaging in substantial gainful activity.[16] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[17] In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[18]

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.[19] If the claimant is successful at the first four steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[20] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[21]

Here, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Although the ALJ determined that Plaintiff suffered from severe impairments of decreased vision, borderline intellectual functioning, and learning disorder,[22] the ALJ found that

---

[16] 20 C.F.R. §§ 404.1505; 416.905.

[17] 20 C.F.R. §§ 404.1520; 416.920.

[18] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

[19] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[20] 20 C.F.R § 404.1520(g)(1).

[21] *Muse*, 925 F.2d at 789.

[22] AR p. 15. During the August 25, 2017 hearing, Plaintiff's counsel asserted that Plaintiff suffers from "a learning disability, some vision problem [sic], generalized anxiety, and major depressive disorder." AR p. 32. In his Decision, the ALJ found that Plaintiff had non-severe impairments of hypertension, affective disorder, and anxiety. AR pp. 13-15. Plaintiff's appeal addresses only the ALJ's findings regarding alleged disability stemming from mental

these severe impairments did not render Plaintiff disabled. After determining that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment,[23] the ALJ found that Plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: no jobs requiring him to read fine print, drive, operate machinery, or work at unprotected heights and dangerous machinery; the claimant can understand, remember and carry out simple and routine tasks; low stress jobs, defined as requiring only occasional decision making and occasional changes in work setting; and no production rate or pace work."[24] Considering Plaintiff's age, education, work capacity, and RFC, the ALJ found that there were jobs in the national economy that Plaintiff could perform and, therefore, Plaintiff was not disabled.[25]

### IV.    Plaintiff's Allegations of Error

Plaintiff argues that the ALJ failed to properly weigh the hearing testimony of Plaintiff and his aunt, as well as certain portions of a Confidential Psychological Consultative Examination (the "Psychological CE") by Dr. James Van Hook, when evaluating Plaintiff's symptoms and developing Plaintiff's RFC. Additionally, Plaintiff argues that the ALJ erred in failing to find that Plaintiff was disabled at step 3 of the sequential evaluation process pursuant to 20 CFR chap. III, pt. 404, subpt. P, app. 1, Listing 12.05B ("Listing 12.05B") based on Plaintiff's intellectual disorder.

---

impairments (based on Listing 12.05B or as considered in determining Plaintiff's symptoms and residual functional capacity ("RFC")).

[23] AR pp. 15-18. The ALJ specifically considered whether Plaintiff's visual impairments met the criteria for Listings 2.02 (loss of central visual acuity), 2.03 (contraction of the visual field in the better eye), and 2.04 (loss of visual efficiency, or visual impairment, in the better eye). AR 15-16. Additionally, the ALJ specifically considered whether Plaintiff met the criteria for Listings 12.02 (Neurocognitive disorders) and 12.05 (Intellectual disorder).

[24] AR p. 18.

[25] AR pp. 22-23.

### V.     Law and Analysis

#### A. Substantial Evidence Supports the ALJ's Determination that Plaintiff Does Not Meet Listing 12.05B

In order to meet the requirements of Listing 12.05B,[26] a claimant must establish three criteria: (1) "[s]ignificantly subaverage general intellectual functioning evidenced" by either "[a] full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence" or "[a] full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence;" (2) "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two" of four delineated areas of mental functioning;[27] and (3) evidence that the claimant's intellectual disorder began prior to the age of 22. On appeal, Plaintiff argues that the ALJ erred in failing to consider IQ scores obtained in 2011 (prior to Plaintiff's current application and Plaintiff's April 9, 2013 alleged onset date).

Plaintiff has the burden of establishing that he meets a Listing.[28] The criteria for the Listings are "demanding and stringent."[29] "Plaintiff's subjective complaints, without objective medical evidence, are insufficient to establish disability."[30] "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment

---

[26] Plaintiff concedes that Listing 12.05A is not applicable. R. Doc. 7, p. 8 ("paragraph A is not applicable to this case, on its face.").

[27] The four areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. Listing 12.05B(2)(a)-(d).

[28] *See*, *Muse*, 925 F.2d at 789; 20 C.F.R. § 404.1520(d).

[29] *Siewert v. Colvin*, Civil Action No. 15-476, 2016 WL 7478968, at * 6 (M.D. La. Dec. 29, 2016) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).

[30] *Id*. (citing 20 C.F.R. §§ 404.1508, 404.1528, 404.1529).

5

that manifests only some of those criteria, no matter how severely, does not qualify."[31] Here, substantial evidence supports the conclusion that Plaintiff has not meet his burden of establishing the criteria of Listing 12.05B.[32]

With respect to his IQ score, Plaintiff argues that although "the 'current' record contains no 'first-hand' or recent test scores," "the claimant's prior attempt to obtain SSI benefits does contain IQ test results that are relevant today."[33] While not included in the instant administrative record, Plaintiff attaches to his supporting memorandum two psychological evaluations submitted in conjunction with a previously denied application for SSI benefits.[34] The first, dated March 16, 2011 from Dr. Alan Taylor and Associates, Inc., reports Plaintiff's full scale IQ score as 55.[35] The second, dated April 6, 2011 from Dr. Sandra Durdin, reports a full scale IQ score of 74.[36]

In a May 22, 2014 Ruling on Plaintiff's previous claim, the two 2011 IQ scores were analyzed as follows:

> On March 15, 2011, Dr. Alan Taylor administered the WAIS-IV and noted the claimant's Full Scale IQ of 55. Three weeks later, April 6, 2011, Dr. Sandra Durdin administered the WAIS-IV and the claimant's Full Scale IQ was 74. Although Dr. Taylor indicated the IQ of 55 was valid, it defies common sense that a person's Full Scale IQ could increase by 20 points in one month. Attorney for the

---

[31] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[32] Plaintiff's Listing 12.05B argument focuses on IQ testing conducted in 2011. Other than asserting that "overwhelming evidence of the present case aptly demonstrate[s] 'marked' limitations (1) understanding, remembering, or maintaining pace," R. Doc. 7, p. 10, Plaintiff does not address whether he meets Listing 12.05B's requirement that he have an extreme limitation in one area of adaptive functioning or marked limitations in two areas of adaptive functioning.

[33] R. Doc. 7, p. 9.

[34] *See*, R. Docs. 7-1 to 7-3. During the August 25, 2017 hearing, Plaintiff's counsel referenced prior IQ testing by Dr. Alan Taylor and Dr. Sandra Durdin. AR p. 32. However, Plaintiff did not include either evaluation in the records submitted in support of his current application for SSI benefits.

[35] R. Doc. 7-2, p. 4.

[36] R. Doc. 7-3, p. 3. Dr. Durdin's results also include scores in verbal comprehension, perceptual reasoning, working memory, and processing speed. None of these scores are 70 or below (R. Doc. 7-3, p. 3) so Durdin's test does not meet any of the criteria under 12.05(B) which requires "[a] full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence."

6

claimant argues the higher scores were the result of "practice effects." While the claimant has been in special education for ten years, his exceptionality is specific Learning Disability, not mental retardation, with deficits in Mathematics, Problem Solving and Written Expression. His adaptive living skills are adequate and show functioning at a higher level than mental retardation. As detailed below, the claimant has no restriction in activities of daily living or social functioning. He also worked for seven months at Albertson's and at the Boys and Girls Club as a program instructor for seven months where he watched children, went on field trips, took care of the children and did lesson plans weekly. He testified he stopped working because he had a hard time doing paperwork and lesson plans so he was let go. While his testimony is corroborated by deficits in written expression, his ability to take care of kids and work activity belies his IQ scores of 55. Despite his testimony regarding the courtesy clerk position at Albertson's that he "had trouble understanding his job duties, did not feel comfortable doing the re-shops and the work was too much for him to cope," the claimant initially reported he was released from Albertson's in February 2013 secondary to budget cuts. The objective evidence supports the higher functioning adaptively than his Full Scale IQ score of 55, as indicated by Dr. Taylor.[37]

Plaintiff argues that the ALJ erred in failing to consider the March and April 2011 IQ scores, erred in failing to resolve "the obvious conflict between the IQ Score of 55 and the ultimate adjudicative outcome of accepting the higher IQ score (74)," and erred in failing to recontact "these clinical psychologists for the purpose of helping to resolve the extreme unlikelihood of such widely discordant IQ Scores where said resolution is essential in ascertaining whether Listing 12.05 has applicability."[38]

To the extent Plaintiff now asks this Court to consider the 2011 IQ scores as additional evidence that should be considered as part of Plaintiff's current claim, a court "may order additional evidence to be taken before the Secretary 'only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into

---

[37] R. Doc. 7-1, p. 7. Internal citations to previous administrative record omitted.
[38] R. Doc. 7, p. 10.

7

the record in a prior proceeding.'"[39] Despite referencing Dr. Taylor's and Dr. Durdin's psychological testing during the August 25, 2017 hearing[40] and relying on same in his brief submitted to this Court, Plaintiff provides no explanation for his failure to make these test results part of the current administrative record and, therefore, has failed to "demonstrate good cause for not having incorporated the new evidence into the administrative record."[41] Further, and in light of the previous ALJ's analysis of the 2011 IQ scores, the 2011 IQ scores are not "material" because they are not "likely to have changed the outcome of the Secretary's determination."[42] This Court has explained that "[t]he ALJ is not required to accept the reported scores. He may decide not to fully credit them if there is evidence that shows they are unreliable, invalid, or inconsistent with other evidence contained in the record."[43] Here, the 2011 IQ scores were considered in the May 22, 2014 ruling, and the ALJ there made the determination that the IQ score of 55 was not supported by the objective evidence. Plaintiff recognizes that this prior determination was upheld

---

[39] *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (citing 42 U.S.C. § 405(g)).

[40] *See*, AR pp. 32-36. During the August 25, 2017 hearing, Plaintiff argued that Dr. Durdin's test results were not reliable while Dr. Taylor's test results were reliable. AR pp. 32-33. Plaintiff's counsel asserted that he "disagree[d] with the prior determinations, even though it was upheld by the Appeals Council, primarily because comparing the first IQ exam, the second IQ exam, is like comparing apples to oranges. They both are fruit, but they're fundamentally different. What happened was there was no evaluation of liability [sic] or validity of the second IQ exam, whereas there was on the first." AR p. 35.

[41] *Pierre*, 884 F.2d at 803.

[42] *Id*. ("the evidence must be 'material'; it must be relevant, probative, and likely to have changed the outcome of the Secretary's determination."). At the hearing, Plaintiff's counsel admitted IQ would not likely be different from Plaintiff's IQ for prior denials. AR p. 35.

[43] *Morris v. Colvin*, No. 13-66, 2014 WL 1415004, at * 6 (M.D. La. April 11, 2014). "As with any medical evidence, the ALJ is not 'required to accept a claimant's IQ score. Rather, the ALJ should examine the record to determine whether the proffered IQ score is reliable–that is, consistent with the claimant's daily activities and behavior. An ALJ may reject IQ scores if they are inconsistent with the record.'" *Ledet v. Colvin*, No. 15-4651, 2016 WL 3079026, at * 8 (E.D. La. May 3, 2016) (quoting *McGee v. Astrue*, 291 Fed. Appx. 783, 787 (8th Cir. 2008) (collecting cases)); *see also*, *Winn v. Social Security Administration*, Civil Action No. 12-2690, 2013 WL 5507289, at * 11 (E.D. La. Oct. 2, 2013) ("As with any medical evidence, the ALJ is not 'required to accept a claimant's IQ score. Rather, the ALJ should examine the record to determine whether the proffered IQ score is reliable-that is, consistent with the claimant's daily activities and behavior. An ALJ may reject IQ scores if they are inconsistent with the record.'") (internal citations omitted).

by the Appeals Council,[44] and there is no indication that Plaintiff otherwise challenged that now final determination.

Finally, even if the Court was inclined to consider the 2011 IQ scores to be new, material evidence justifying possible remand, Plaintiff has not met his burden of establishing he meets Listing 12.05B(2), which requires an extreme limitation in one area of adaptive functioning or marked limitations in two areas of adaptive functioning. Although Plaintiff asserts that "overwhelming evidence of the present case aptly demonstrate[s] 'marked' limitations (1) understanding, remembering, or maintaining pace,"[45] he does not provide the Court with any specific citations supporting that statement.[46]

### B. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Symptoms

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[47] Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance.[48] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[49] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the

---

[44] *See*, AR p. 35.

[45] R. Doc. 7, p. 10.

[46] Plaintiff does not appeal the ALJ's determination that he has mild limitations in the areas of understanding, remembering, and carrying out instructions; interacting with others; and maintaining concentration, persistence and pace or the ALJ's determination that Plaintiff has no limitation in adapting or managing himself. *See*, AR pp. 16-17. However, Plaintiff's arguments regarding the ALJ's evaluation of his symptoms and RFC considering hearing testimony and portions of Dr. Van Hook's psychological CE are relevant to Plaintiff's adaptive functioning. As discussed below, there is substantial evidence to support the ALJ's determination regarding Plaintiff's symptoms and RFC.

[47] *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[48] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[49] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

decision must be affirmed even if there is evidence on the other side.[50] In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[51]

Plaintiff contends that in evaluating his symptoms, the ALJ "ignored and/or rejected, without explanation, the 'other evidence' of record"[52] in contravention of Social Security Ruling ("SSR") 16-3p.[53] Specifically, Plaintiff asserts that the ALJ failed to properly consider Plaintiff's hearing testimony, the hearing testimony of Plaintiff's aunt, and certain portions of Dr. Van Hook's Psychological CE.

Under Social Security Ruling ("SSR") 16-3p, a "symptom" is defined "as the individual's own description or statement of his or her physical or mental impairment(s)."[54] SSR 16-3p provides that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability" and that when determining whether an individual is disabled, the Commissioner will consider all of a claimant's symptoms "and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record."[55] The Ruling goes on to provide guidance

---

[50] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

[51] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[52] R. Doc. 7, p. 4. *See also*, R. Doc. 7, p. 6 (arguing that because functional limitations discussed by aunt during the August 25, 2017 hearing "represent basic mental functional requirements of work, as expressed in SSR 16-3p, the ALJ's failure to incorporate same in the determination of claimant's RFC was error….").

[53] 2017 WL 5180304. *See*, R. Doc. 7, pp. 4-7. *See*, R. Doc. 7, p. 7 ("In sum, the ALJ failed to adequately assess claimant's symptomology as per the requirements of SSR 16-3p.").

[54] 2017 WL 5180304, at * 2.

[55] *Id*. *See also*, *id*. at * 4 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

10

regarding the Commissioner's consideration of objective medical evidence and "other evidence" including the claimant's statements, statements from medical sources[56] and non-medical sources (including the claimant's family),[57] and sets out that the Commissioner's determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."[58]

### i. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Hearing Testimony

During the August 25, 2017 hearing, Plaintiff testified regarding his activities of daily life and past work history. Plaintiff stated that he lives with his grandmother and aunt.[59] He testified that he is able to sweep and mop,[60] but does not mow the grass,[61] does not cook, and does not do laundry.[62] He stated that he is able to go to the store half a block away from his home by himself

---

[56] *See*, *id*. at * 7 ("Medical evidence from medical sources that have not treated or examined the individual is also important in the adjudicator's evaluation of an individual's statements about pain or other symptoms. For example, State agency medical and psychological consultants and other program physicians and psychologists may offer findings about the existence and severity of an individual's symptoms. We will consider these findings in evaluating the intensity, persistence, and limiting effects of the individual's symptoms.").

[57] *See*, *id*. at * 7 (describing non-medical sources including public and private agencies, other practitioners, educational personal, non-medical sources such as family and friends, and agency personnel).

[58] *Id*. at * 10. Plaintiff argues that "there is no evidence that the ALJ considered claimant's symptoms in light of all of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(b)." R. Doc. 7, p. 7. Per § 404.1529(c)(3), the Commissioner will consider the claimant's daily activities; location, frequency, and intensity of symptoms; precipitating or aggravating factors; medications taken and their side effects; treatment other than medication; other measures taken to relieve symptoms; and other factors concerning functional limitations. § 416.929(c)(3) sets out the same considerations. These factors, to the extent applicable, were considered by the ALJ. Specifically, the ALJ considered Plaintiff's daily activities (based on hearing testimony and self-reporting) and his behavior during the August 25, 2017 hearing in addition to the limited treatment records made part of the administrative record.

[59] AR p. 40.

[60] AR p. 42.

[61] AR p. 43 ("I had problems with lining up the lawn mower so that there wouldn't be a gap.").

[62] Plaintiff explained that his grandmother and aunt cook for him because "one time I almost started a fire," and that they also do his laundry "because one time I put, I put a red sock in some white clothes, and it got bleached." AR p. 52. In his Adult Function Report, Plaintiff reported that he does not cook because he is "forgetful, may not remember that I put it on the stove." AR p. 238.

11

and pay for purchases,[63] that he has no problems getting along with other people, and can sometimes finish what he starts (if he doesn't get distracted).[64] With respect to past work experience, Plaintiff stated that he worked at Fred's and Dollar General but that he had been fired because he "wasn't performing like they wanted me to."[65] He testified that he had experienced some problems working a cash register[66] and could "sometimes" restock items correctly, albeit at a slower pace.[67] He additionally stated that he left a job as a courtesy clerk at a grocery store because "it just kind of got too much for me."[68] He explained that he had previously worked with six or seven-year-old kids as an assistant in an after school program for six months and that his duties were "to help the kids, the ones that didn't know what they were doing, and making sure that they were doing what they were supposed to," help with arts and crafts, and occasionally accompany the children on field trips.[69]

In his January 26, 2018 Decision, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[70] There is substantial evidence to support the ALJ's determination. First, when considering Plaintiff's testimony, the ALJ explained that "claimant admitted to performing significant and numerous activities of daily living" and

---

[63] AR pp. 44 & 46. Plaintiff confirmed that when he went to the store by himself, he was able to tell how much money to give, and how much money he was supposed to get back. AR p. 44.

[64] AR p. 44.

[65] AR p. 39. Plaintiff testified that he cannot work at any job "because of the stress that it comes with the responsibilities and learning how to do the job and keeping up with, keeping up with the job." AR pp. 39-40.

[66] *See*, AR p. 48 ("When it comes down to knowing which coin is worth how much, and just trying to calculate it in my head. I didn't want to mess up. So I would take too long, or I'd get confused, and I had to start all over.").

[67] AR pp. 48-49.

[68] AR p. 51. Plaintiff further testified that while employed as a courtesy clerk, he had trouble completing tasks and problems with memory and instruction. AR pp. 51-52.

[69] AR pp. 49-50.

[70] AR p. 19.

12

concluded that "claimant's actual activities reveal a significantly greater physical and mental functional ability than alleged."[71] In particular, the ALJ noted that Plaintiff "has his own room," "performs some household chores such as sweeping, mopping, and taking out the garbage," and "is able to pay for things and knows how much change he should get back."[72] In addition to Plaintiff's hearing testimony, an Adult Function Report completed by Plaintiff reflects similar daily functioning abilities,[73] as does Plaintiff's self-reporting of abilities during the Psychological CE.[74] Additionally, treatment notes from "Rebecca A. Davis FNP-C, LLC" indicate that Plaintiff presented oriented to person, place, and time; with fluent speech; coherent thought processes; and good insight.[75] Based on Plaintiff's hearing testimony, self-reporting, and treatment records, substantial evidence exists to support the ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[76]

---

[71] AR p. 21. "It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status." *Leggett v. Chater*, 67 F.3d 558, 565, n. 12 (5th Cir. 1995).

[72] AR p. 19.

[73] *See*, AR p. 237 (Daily activities listed as "brush teeth, wash face, check on my grandmother, straighten and clean house, fix breakfast (instant microwave items), watch tv. Family comes to check on us, sort my clothes so I can wash them."); AR p. 237 (Plaintiff helps take care of his grandmother, no problems with his own personal care); AR p. 238 (Does not need reminders to take care of personal needs and grooming but does need reminders to take medication); AR p. 238 (Plaintiff can wash dishes and wash clothes if someone sorts them, mop if supervised, sweep, no outside chores); AR p. 239 (Can walk, use public transportation, and ride in a car. Can go shopping at the corner store alone to shop for personal needs. Can pay bills, count change, handle a savings account but needs help with a checkbook); AR p. 241 (Can pay attention for 15 minutes, can follow spoken instruction "if explained good.").

[74] AR p. 289 (Plaintiff self-reported ability to do limited household chores such as mopping, sweeping, washing dishes; self-reported ability to manage money and banking, ability to bathe and dress himself, ability to use public transportation). During the Psychological CE, Plaintiff apparently also self-reported that he was unable to work due to "transportation problems." AR 289.

[75] *See*, AR p. 309 (Jan. 5, 2017 note); p. 315 (February 6, 2017 note); p. 321 (April 25, 2017 note); p. 345 (August 14, 2017 note); p. 350 (July 6, 2017 note).

[76] AR p. 19.

### ii. Substantial Evidence Supports the ALJ's Decision to Afford the Testimony of Plaintiff's Aunt "Little Weight"

Plaintiff's aunt, Tammy Williams, also testified at the August 25, 2017 hearing. Ms. Williams stated that she believed Plaintiff could not keep a job because "he can't follow directions."[77] With respect to tasks at home, Ms. Williams explained that Plaintiff was "slow" and that she would have to go back behind Plaintiff to redo chores.[78] She additionally stated that: "He can't take care of himself. He has, probably the rest of his life he's going to have to live with somebody."[79] Regarding interacting with others, Ms. Williams testified that Plaintiff "likes to stay in his room a lot. He'll come out and socialize, and he goes back into his room. And then he'll come out again for a little while. Then he go back in his room."[80] Ms. Williams confirmed that Plaintiff can go to the corner store by himself for a cold drink or to order food. [81]

The ALJ assigned Ms. Williams' opinion regarding Plaintiff's symptoms and abilities "little weight because they were not supported by the medical evidence of record, add little

---

[77] AR p. 55. Ms. Williams stated that Plaintiff had trouble stocking because he forgot to put the labels facing outward and that "he'd either overstock or put stuff in the wrong place." AR pp. 55-56. She additionally testified that Plaintiff didn't work as a cashier because "he couldn't concentrate on keeping up with the system." AR p. 56. Ms. Williams also stated that "sometimes [Plaintiff] get angry and frustrated. Like another job he had working at the school with kids, at the boys and girls club, one of the little children he wound up grabbing them around the shirt collar because he told him three or four times what the teacher told him to do, and he wouldn't do it. So they let him go because of that job also."). Ms. Williams' recollection regarding the reason Plaintiff was "let go" from the boys and girls club appears to be different from the explanation provided by Plaintiff (as set forth in the previous May 22, 2014 ruling that Plaintiff had trouble with paperwork and lesson plans).

[78] AR p. 56 ("He's slow, and like if I tell him to do something, I might have to tell him more than once. And if I go back and check, it's not done right. He can take the trash out, but he forget to put the garbage bag, garbage bag in the trash."); ("I tell him to wash the dishes he ate out. He'll wash them, but they don't be clean. I have to go back and rewash them, but I still make him wash them. I still have to wash his clothes. He just learned how to tie his shoestrings about two years ago, and sometime I look down, and still have to tell him tie your shoestring. Wash your hair because your hair smells. You're taking a bath, but you're forgetting to wash your hair. Just like things you would tell a two or three-year-old child, got to tell him over and over.").

[79] AR p. 57. Ms. Williams testified that she believed Plaintiff would need someone to accompany him to the bank, post office, and doctor's appointments. AR p. 59.

[80] AR p. 58.

[81] AR p. 59. Ms. Williams did assert that Plaintiff is "not good at going anywhere by himself" and explained that with respect to a trip to the corner store to order food, Plaintiff would walk to the store to order, walk home to wait, and then walk back to the store to pick up his order. *Id*.

information, and are inconsistent with the medical evidence."[82] As explained above, substantial evidence exists to support the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[83] While Plaintiff's aunt testified that Plaintiff can't take care of himself and will have to live with someone else his entire life, Plaintiff himself noted greater levels of ability with respect to household chores, self-care, and the ability to make purchases independently.[84] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[85] Here, considering Plaintiff's self-reported abilities as well as the treatment records discussed above, substantial evidence supports the ALJ's decision to afford Ms. Williams' testimony little weight.

### C. Substantial Evidence Supports the ALJ's RFC Determination

As stated above, the ALJ found Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: no jobs requiring him to read fine print, drive, operate machinery, or work at unprotected heights and dangerous machinery; the claimant can understand, remember and carry out simple and routine tasks; low stress jobs, defined

---

[82] AR p. 22.

[83] AR p. 19.

[84] The Fifth Circuit has previously explained that "[s]upporting, objective findings are important to the disability determination because the observations of an individual, particularly a lay person, may be colored by sympathy for the affected relative or friend and influenced by that person's exaggeration of his limitation." *Harrell v. Bowen*, 862 F.2d 471, 482 (5th Cir. 1988). In any event, an ALJ is entitled to find evidence outside of the hearing testimony more persuasive when considering a disability claim. *See*, *Clary v. Barnhart*, 214 Fed. Appx. 479, 482 ("In denying benefits, the ALJ considered, *inter alia*, numerous medical reports, medical evidence, Clary's testimony, and the testimony of her sister. Obviously, the evaluation of a claimant's subjective symptoms 'is a task particularly within the province of the ALJ.'") (quoting *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir.1988) (internal quotations omitted)); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("The ALJ found the medical evidence more persuasive than the claimant's own testimony. These are precisely the kinds of determinations that the ALJ is best positioned to make.").

[85] *Masterson*, 309 F.3d at 272 (5th Cir. 2002); *Selders*, 914 F.2d at 617.

15

as requiring only occasional decision making and occasional changes in work setting; and no production rate or pace work."[86]

With respect to this RFC, Plaintiff raises the same objection as set forth regarding the ALJ's evaluation of Plaintiff's symptoms – that the ALJ failed to adequately consider Ms. Williams' testimony.[87] Relatedly, Plaintiff argues that the ALJ erred in failing to consider Plaintiff's "ability to perform work-related activities on a sustained basis…"[88] and that "the only evidence specifically addressing" Plaintiff's ability to sustain work-related activities is the hearing testimony of Ms. Williams.[89]

The Fifth Circuit has "specifically rejected" the contention that the ALJ "must articulate in every decision a separate and explicit finding that a claimant can maintain a job on a sustained basis."[90] "An ALJ is not required to '"make a specific finding regarding the claimant's ability to maintain employment in every case.'"[91] Generally, such a finding is "inherently subsumed in an

---

[86] AR p. 18.

[87] Plaintiff also argues that the ALJ erred in relying on treatment records from "Rebecca A. Davis, FNP, LLC" because "the assessment…was done by a nurse practitioner (Rebeca A. Davis, FNP, LLC) (R. 309). Therefore, she should not be considered as a 'qualified' medical source for psychological testing pursuant to Section 12.00H2(c)….Because there is no evidence of any specialized psychological training received by this nurse practitioner, her comments regarding claimant's mental impairments beyond observations of behaviors, cannot constitute substantial evidence." R. Doc. 7, p. 13. As an initial matter, it appears that Dustin Logue actually provided the treatment reflected in these records, and Plaintiff has not made any argument regarding Mr. Logue's qualifications. Moreover, while Listing 12.00H provides that standardized intelligence test results will be considered useable "when the measure employed meets contemporary psychometric standards for validity, reliability, normative data, and scope of measurement and a qualified specialist has individually administered the test according to all pre-requisite testing conditions," the ALJ did not cite these records for such testing. Finally, Plaintiff apparently recognizes that "observations of behaviors" as set forth in the records may properly be considered. Although these records include an apparently self-reported diagnosis of "mild cognitive disorder, so stated," observations regarding Plaintiff's orientation, speech, coherency of thought process, and insight fit within this category. *See*, AR pp. 321, 324, 345, 350.

[88] R. Doc. 7, p. 13.

[89] R. Doc. 7, p. 14.

[90] *Castillo v. Barnhart*, 151 Fed. Appx. 334, 2005 WL 2675002, at * 2 (5th Cir. Oct. 20, 2005) (citing *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005)).

[91] *Watson v. Colvin*, No. 15-787, 2017 WL 1086217, at * 4 (M.D. La. Feb. 16, 2017) (quoting *Perez*, 415 F.3d at 465).

16

RFC."[92]  An ALJ may be required to make a specific finding regarding the ability to sustain employment when the claimant's alleged disability "waxes and wanes."[93]  Plaintiff does not allege that his symptoms wax and wane.  Instead, Plaintiff argues that the ALJ erred in failing to credit Ms. Williams' testimony that "claimant's lack of job longevity has been due to his inability to follow directions, his slow pace, and his anger and frustration stemming from his lack of understanding." [94]  For the reasons set forth above, substantial evidence supports the ALJ's treatment of Ms. Williams' testimony.

---

[92] *LeDoux v. Colvin*, No. 14-477, 2015 WL 5636414, at * 6 (M.D. La. Aug. 31, 2015) ("Although the ALJ did not explicitly find Plaintiff capable of performing work on a sustained basis, this finding is inherently subsumed in an RFC."). *See also*, *Crainey v. Astrue*, No. 11-613, 2012 WL 5846406, at * 7 (N.D. Tex. Nov. 1, 2012) ("the Court does not read *Singletary* as standing for the proposition that a claimant with a mental impairment automatically is unable to maintain employment.").

[93] *Perez*, 415 F.3d at 465.  In *Perez*, the court explained that a finding regarding a claimant's ability to sustain employment might be required where the claimant's alleged disability waxed and waned in its manifestation of disabling symptoms (for example, where a claimant alleged disability based on degenerative disc disease causing loss of movement in her legs every number of weeks).  415 F.3d at 465.  *See also*, *Lee v. Colvin*, No. 13-705, 2015 WL 3604133, at * 5 (M.D. La. June 5, 2015) ("As explained and clarified by the Fifth Circuit in *Frank v. Barnhart* and *Perez v. Barnhart*, nothing in *Watson v. Barnhart*, suggests that in every case the ALJ must make a specific finding regarding the claimant's ability to maintain employment.  Such a finding is generally implicit in the assessment of the claimant's residual functional capacity.  An explicit finding that the claimant can maintain employment is not required, unless there is evidence in the record that the claimant's condition waxes and wanes in its manifestation of disabling symptoms."); *James v. Astrue*, No. 11-484, 2012 WL 4159326, at * 3 (M.D. La. Sept. 18, 2012) ("in order to trigger specific findings regarding the sustainability of employment, plaintiff must set forth evidence of two factors: 1) that her ability to sustain employment is compromised by her depression and/or anxiety symptoms; and 2) her condition, by its very nature, waxes and wanes in its manifestation of disabling symptoms.  Also, plaintiff cannot support her claim with conclusory statements; she must submit medical or other evidence to support her claim.") (citing 20 C.R.R. §§ 404.1512(a), 416.912(a)); *Prejean v. Astrue*, No. 10-1725, 2012 WL 279669, at * 4 (W.D. La. Jan. 12, 2012) ("although [plaintiff] contends that her frequent panic attacks preclude her ability to sustain employment, there is no evidence in the record establishing that the mental impairments [plaintiff] complains about wax and wane in the manifestation of disabling symptoms.  Under these circumstances, the ALJ was not required to make a specific finding on [plaintiff's] ability to maintain employment."); *Morton v. Social Sec. Admin.*, No. 15-4435, 2016 WL 5724810, at * 5 (E.D. La. Sept. 15, 2016) ("Plaintiff simply argues that the 'record in this matter demonstrates' that she has 'mental and physical conditions that wax and wane.'  That is simply not enough to carry her burden of proof.  She does not specify what that evidence is and how it rises to the level anticipated by *Frank*.").

[94] R. Doc. 7, p. 14.  Plaintiff also complains that the ALJ did not accept Ms. Williams' testimony that "claimant is likely to have to live 'with somebody' for the rest of his life."  There is nothing in the administrative record to support Ms. Williams' belief that Plaintiff will have to live with someone else for the rest of his life.  As discussed above, Plaintiff himself testified regarding his ability to complete activities of daily living.

17

### D. Dr. Van Hook's Psychological Evaluation Does Not Change the Result

In the January 26, 2018 Decision, the ALJ discussed the Psychological CE conducted by Dr. Van Hook. That Psychological CE provides a narrative regarding Plaintiff's self-reported abilities,[95] Dr. Van Hook's own observations,[96] and the results of a mental status exam ("MSE"). At various points in his supporting memorandum, Plaintiff relies on parts of the MSE performed by Dr. Van Hook. Plaintiff contends that portions of Dr. Van Hook's report are consistent with Plaintiff's and his aunt's testimony but that "[o]ther opinions offered by Dr. Van Hook are negated by the admittedly flawed nature of claimant's behaviors and oral expressions due to his alleged malingering and/or lack of effort."[97] Plaintiff argues that "Dr. Van Hook's only valid assessments actually support claimant's disability" and points to portions of Dr. Van Hook's report regarding Plaintiff's "poor fund of general information," inadequate reading fluency and basic comprehension for at least sixth grade passage level, inadequate concentration, and inadequate short term memory.[98]

While Plaintiff seeks to rely on these portions of Dr. Van Hook's report, Dr. Van Hook consistently indicated his concern that Plaintiff made "near misses," expended "suboptimal effort," and showed "probable evidence of malingering."[99] Plaintiff does not explain why certain portions of Dr. Van Hook's MSE should "support claimant's disability" considering Dr. Van Hook's

---

[95] Per Dr. Van Hook, Plaintiff reported that "he has been having problems following directions and getting from place to place on his own. He said that he has trouble doing things on his own." Plaintiff additionally reported that "he has been fired from jobs in the past for not being able to follow simple directions," and "was not able to work because of transportation problems." AR p. 288. Plaintiff reported that he has trouble managing stress, is not able to drive, but is able to bathe and dress himself. AR p. 288.

[96] Dr. Van Hook observed that Plaintiff's appearance was adequate; his speech was goal directed; Plaintiff had "no difficulty regulating his affect" during the mental status exam; made adequate eye contact; and exhibited intact, logical, and coherent thinking. AR pp. 288-289.

[97] R. Doc. 7, p. 7.

[98] R. Doc. 7, p. 12, AR p. 289.

[99] AR pp. 289-290.

concern regarding Plaintiff's efforts during the evaluation.[100] Moreover, assuming, *arguendo*, that Plaintiff's evaluation could be parsed as Plaintiff apparently contends, even certain of the portions of the report relied on by Plaintiff indicate poor effort on Plaintiff's behalf. [101]

## VI. Recommendation

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record, considered as a whole, supports the findings that the ALJ applied the proper legal standards and that substantial evidence supports the determination that Plaintiff was not disabled. Accordingly, **IT IS RECOMMENDED** that the final decision of the Acting Commissioner of Social Security be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g), and that this action be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 2, 2020.

*Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[100] *See*, *Broadnax v. Barnhart*, 54 Fed. Appx. 406, 2002 WL 31688935, at * 1 (5th Cir. Oct. 29, 2002) (explaining that ALJ did not err in discrediting, *inter alia*, claimant's statements regarding functional incapacity because "doubts about Broadnax's malingering and poor motivation clouded the results of psychological examinations.").

[101] *See*, AR p. 289 ("He had a poor fund of general information but made near miss responses."); ("Concentration was not adequate for days of the week backwards, mental computations, or serial digits. Short-term memory was not intact. He was unable to recall serial digits forward or backward. He made near miss responses. His performance was abnormal, but his level of effort was judged to be inadequate.").